UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LOLITA PRIDGEON,

    Plaintiff,

Docket No.

3:02 CV 1032 GLG

VS.

AMERICAN AIRLINES,

    Defendant.

**NOTICE OF MOTION FOR SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that defendant American Airlines, Inc. by its attorneys, the Law Offices of Paul A. Lange and Condon & Forsyth, LLP, will move this Court at a hearing to be held before the Honorable Gerard L. Goettel, at the Courthouse located at 141 Church Street, New Haven, Connecticut, on _____ at __ in the ___noon of that day, for an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting summary judgment dismissing the Complaint on the ground that there is no genuine issue of material fact in dispute and that American Airlines is entitled to judgment dismissing the Amended Complaint as a matter of law or, in the alternative, entering an Order limiting American Airlines' liability in this matter to the sum of 100,000 SDRs, representing American Airlines' maximum limit of liability under the IATA Intercarrier Agreement.

PLEASE TAKE FURTHER NOTICE that the motion will be based upon the following papers:

    1.    Local Rule 56(a)1 Statement;



2.  Affidavit of Michael J. Holland, sworn to April 5, 2004 and the exhibits annexed thereto, to-wit:

    A.  Complaint dated May 15, 2002;

    B.  Amended Complaint dated August 30, 2002;

    C.  Answer to Amended Complaint dated September 16, 2002;

    D.  Deposition transcript of plaintiff dated December 18, 2003;

    E.  Fourth Amended Scheduling Order dated February 25, 2004;

    F.  Letter to Timothy O'Keefe, Esq. dated March 16, 2004;

    G.  Center for Disease Control website information on Campylobacter infections; and

    H.  Guillain-Barre Syndrome Foundation International website information.

3.  Declaration of Matrix de Vries dated March 3, 2004;

4.  Declaration of Laurent Faye dated March 4, 2004;

5.  Affidavit of Dale Norgard dated January 9, 2004;

6.  Affidavit of Dr. Kevin M. Cahill dated March 31, 2004 with curriculum vitae and attached report dated June 29, 2003;

7.  Affidavit of Dr. Jerome M. Block dated March 31, 2004 with curriculum vitae and attached reports dated November 26, 2003 and January 31, 2004.

A Memorandum of Law is also submitted in support of the within Motion. Oral argument is not requested on the motion.

PLEASE TAKE FURTHER NOTICE that opposing papers, if any, are due by ____, 2004, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Rule 7(a) of the District of Connecticut Local Rules of Civil Procedure.

Dated: New York, New York
April 5, 2004

Law Offices of Paul A. Lange

By *[signature]*
Alison L. McKay
Bar No. CT 22260
alm@lopal.com
80 Ferry Boulevard
Stratford, Connecticut 06615-6079
(203) 375-7724
(203) 375-9397 (facsimile)

- and -

CONDON & FORSYTH LLP

By *[signature]*
Michael J. Holland
Bar No. CT 22894
mholland@condonlaw.com
685 Third Avenue
New York, New York 10017
(212) 894-6740
(212) 370-4482 (facsimile)
Attorneys for Defendant
AMERICAN AIRLINES, INC.

To: Timothy L. O'Keefe, Esq.
Kenny, O'Keefe & Usseglio, P.C.
Attorneys for Plaintiff
21 Oak Street
Hartford, CT 06106
(860) 246-2700

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

Mary Ann Rooney, being duly sworn, deposes and says that deponent is not a party to the action, is over 18 years of age and resides in Queens, New York. That on April 5, 2004, deponent served the within Notice of Motion for Summary Judgment upon:

> Timothy L. O'Keefe, Esq.
> Kenny, O'Keefe & Usseglio, P.C.
> 21 Oak Street
> Hartford, Connecticut  06106

the address designated by said attorneys for that purpose by depositing same enclosed in a properly addressed wrapper in an official depository under the exclusive care and custody of the United States Post Office Department within the State of New York.

_____
Mary Ann Rooney

Sworn to before me this
5th day of April, 2004

_____
Notary Public

MICHAEL J. HOLLAND
Notary Public, State of New York
No. 41-4501283
Qualified in Nassau County
Commission Expires August 31, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LOLITA PRIDGEON,

    Plaintiff,

VS.

AMERICAN AIRLINES,

    Defendant.

Docket No.

3:02 CV 1032 GLG

Local Rule 56(a) 1 Statement

Defendant American Airlines, Inc. by and through its attorneys, the Law Offices of Paul A. Lange and Condon & Forsyth, LLP, moves for summary judgment and contends that there is no genuine issue to be tried as to the following facts:

1.     Lolita Pridgeon and her significant other, Dr. Siegfried Kra, took a two week vacation in France, departing the United States on May 31, 2000 and returning to the United States on June 13, 2000. (Deposition of Lolita Pridgeon conducted December 18, 2003, p. 21 (hereinafter "Pridgeon deposition, p. __"))

2.     Plaintiff and Dr. Kra travelled around France, staying at a friend's apartment in Paris from June 1-3, 2000 and thereafter at chateaus and inns in France through June 13, 2000. (Pridgeon deposition, pp. 23-28)

3.  Ms. Pridgeon does not have the tickets for her flight on American Airlines or any documentary evidence of meals that she ate in France during the two weeks she was there prior to her flight on American Airlines on June 13, 2000. (Pridgeon deposition, p. 106)

4.  Ms. Pridgeon does not recall having eaten chicken in France but could have done so. (Pridgeon deposition, p. 28)

5.  Plaintiff Lolita Pridgeon was an economy class passenger, together with Dr. Siegfried Kra, aboard American Airlines Flight No. 121 from Charles de Gaulle Airport in Paris, France to John F. Kennedy International Airport in New York on June 13, 2000. (Pridgeon deposition, pp. 29-32; Amended Complaint, para. 5)

6.  Approximately two hours after the flight from Paris to New York took off, Ms. Pridgeon, who was seated in the middle of the economy class section of the aircraft, was offered a meal of beef or chicken. (Pridgeon deposition, p. 33)

7.  Ms. Pridgeon selected the chicken meal. (Pridgeon deposition, p. 33, line 21)

8.  The chicken meal served to Ms. Pridgeon was Chicken Rosemary, a chicken breast which came heated on one plate. (Pridgeon deposition, p. 34)

9.  Chicken Rosemary was one of the economy class food selections served to passengers as part of the main dish served on American Airlines Flight No. 121 on June 13, 2000. (Affidavit of Dale Norgard, Senior Analyst in Risk Management for American Airlines, Inc. dated January 9, 2004, para. 2 (hereinafter "Norgard affidavit", para. __))

10. Meals for American Airlines' flights from Paris to the United States are provided by Gate Gourmet to American Airlines pursuant to a catering contract. (Norgard affidavit, para.

6); Declaration of Laurent Faye, Financial Controller for Gate Gourmet (France) dated March 4, 2004, para 3 (hereinafter "Faye declaration, para. __))

11.  The supplier for the Chicken Rosemary meal served aboard American Airlines' flights in June of 2000 is Pourshins, an English company from whom Gate Gourmet purchases its meals. (Faye declaration, para. 5)

12.  The chickens are cooked and frozen by one of two suppliers who were based in Amsterdam, Holland in June of 2000, Delta Daily Food or Marfo Martinair Foods. (Faye declaration, para. 5)

13.  Marfo Martinair Foods is a Netherlands company which is involved in preparing flight meals served by airlines. (Declaration of Matrix de Vries, Sales & Export Manager for Marfo Martinair Foods, dated March 3, 2004, para.1 (hereinafter "de Vries Declaration, para. __"))

14.  Marfo Martinair Foods has been in the business of cooking chicken products for the airline industry for over 29 years and supplies the airline industry with over 250 tons of cooked chicken products per year. (de Vries declaration, para. 7)

15.  The chickens purchased by Marfo Martinair Foods meet bacteriological specifications and, if those specifications are not met, Marfo Martinair Foods does not purchase the chickens from their suppliers. (de Vries declaration, para. 4)

16.  The production process for the Chicken Rosemary meal is as follows: The chicken is heated for two minutes at a minimum of 70 degrees Celsius (144 degrees Fahrenheit). (de Vries declaration, para. 5)

3

17. After the heating, the chickens are cooled within two hours back to 10 degrees Celsius (approximately 48 degrees Fahrenheit) in a chilled area with a set temperature of 7 degrees Celsius (approximately 43 degrees Fahrenheit). (de Vries declaration, para. 5)

18. The meal is thereafter assembled into a dish, which dish is ultimately served to the airline passenger. (de Vries declaration, para. 5)

19. After the meal is assembled, the assembled meal is frozen for about two hours at -45 degrees Celsius (approximately -104 degrees Fahrenheit). (de Vries declaration, para. 6)

20. After a two hour period, the meal will have a core temperature of -18 degrees Celsius (approximately -71 degrees Fahrenheit). (de Vries declaration, para. 6)

21. After freezing, the meals are packed in boxes or plastic crates and are stored in warehouse at -18 degrees Celsius (approximately -71 degrees Fahrenheit). (de Vries declaration, para. 6)

22. Vehicles then transport the meals to the supplier's warehouse and the temperature in the portion of the vehicle carrying the meals is set on a temperature at a minimum of -18 degrees Celsius (-71 degrees Fahrenheit). (de Vries declaration, para. 6)

23. Marfo Martinair Foods does supply frozen chickens to Pourshins, Inc., who in turn sells the chickens to American Airlines. (de Vries declaration, para. 3)

24. The chickens are cooked and frozen in the Netherlands and trucked to Pourshins in England in refrigerated vehicles. (Faye declaration, para. 6)

25. The chickens remain frozen when they are purchased by Gate Gourmet from Pourshins. (Faye declaration, para. 6)

26. After the meals are purchased by Gate Gourmet, the chickens are trucked in refrigerated vehicles to Gate Gourmet's facilities in Paris where they remain in a freezer until one day before they are to be used on American Airlines flights. (Faye declaration, para. 6)

27. The day before the chickens are to be used on the American Airlines flights, they are moved into a refrigerator for one day and are then taken in a refrigerated truck from the Gate Gourmet facility to the American Airlines flight. (Faye declaration, para. 7)

28. The chickens are then heated by the cabin crew and are served to the passengers. The chickens are individually packaged in casserole form when they are purchased by Gate Gourmet from Pourshins. (Faye declaration, para. 8)

29. The chicken breast served to Ms. Pridgeon consisted of pale white meat. (Pridgeon deposition, p. 34)

30. After Ms. Pridgeon cut into the chicken, she saw that it was pink. (Pridgeon deposition, p. 34)

31. Ms. Pridgeon did not see any blood run out of the chicken. (Pridgeon deposition, p. 34)

32. Ms. Pridgeon ate two or three bites of the chicken and did not eat any more of it because the chicken was pink. (Pridgeon deposition, p. 35)

33. The chicken seemed to have a funny taste in that "it was cold and the texture was also kind of chewy and just didn't taste good to me like chicken". (Pridgeon deposition, p. 35)

5

34. Plaintiff did not make any comment to the flight attendant on the meal and did not call the flight attendant over to complain about the content of the meal. (Pridgeon deposition, p. 35)

35. The only person who Ms. Pridgeon told about the meal was Dr. Kra, who told her not to eat any more of it. (Pridgeon deposition, p. 36)

36. Plaintiff returned to her home in Woodbridge, Connecticut on the evening of June 13, 2000 and felt fine until mid-morning of Thursday, June 15, 2000. (Pridgeon deposition, p. 40)

37. Ms. Pridgeon felt no illness on her first full day back in the United States, June 14, 2000. (Pridgeon deposition, p. 39)

38. Ms. Pridgeon does not recall what she ate on June 14, 2000. (Pridgeon deposition, p. 40)

39. Ms. Pridgeon developed a low grade fever, diarrhea and vomiting which lasted throughout the late morning, afternoon and early evening hours of June 15, 2000. (Pridgeon deposition, pp. 41 to 43)

40. Ms. Pridgeon experienced joint pains in her knees and feet in the afternoon of June 15, 2000. (Pridgeon deposition, p. 43)

41. When Ms. Pridgeon woke up on Friday, June 16, 2000, the diarrhea and vomiting had stopped. (Pridgeon deposition, p. 45)

42. Ms. Pridgeon never had any intestinal problems or vomiting problems following June 15, 2000. (Pridgeon deposition, pp. 52 to 57)

43. The pains in Ms. Pridgeon's knees and ankles had subsided by Friday, June 16, 2000. (Pridgeon deposition, p. 58)

44. While Ms. Pridgeon felt tired over the next few days between June 16, 2000 and June 20, 2000, she experienced no diarrhea, vomiting or pains in her ankles and knees. (Pridgeon deposition, pp. 48-57)

45. The pains in Ms. Pridgeon's knees and ankles returned on Wednesday, June 21, 2000. (Pridgeon deposition, p. 58)

46. Ms. Pridgeon saw Dr. Stanley Roth, a friend of Dr. Kra's, on Wednesday, June 21, 2000. (Pridgeon deposition, p. 59)

47. Ms. Pridgeon complained to Dr. Roth of pain in her feet and knees and took warm baths to alleviate the symptoms. (Pridgeon deposition, pp. 59 to 63)

48. Ms. Pridgeon woke up with severe pain in her feet and knees on Thursday, June 22, 2000. Dr. Kra took her to emergency room at St. Raphael's Hospital at 7:30 a.m. that morning for treatment. (Pridgeon deposition, pp. 63-64) Ms. Pridgeon was discharged that evening to her home. (Pridgeon deposition, p. 65)

49. On June 23, 2000, a Friday morning, Ms. Pridgeon fell while getting out of her bed to go to the shower. (Pridgeon deposition, p. 66)

50. Ms. Pridgeon was unable to move her legs and she was transported by an ambulance to St. Raphael's Hospital. (Pridgeon deposition, p. 67)

51. Ms. Pridgeon was unable to move her limbs when she arrived at St. Raphael's on June 23, 2000. (Pridgeon deposition, p. 68)

7

52. Ms. Pridgeon was admitted to the intensive care unit at St. Raphael's Hospital on June 23, 2000 where she remained until July 12, 2000, a time span of some 19 days. (Pridgeon deposition, p. 70)

53. During the period of time that she was in the intensive care unit at St. Raphael's Hospital, Ms. Pridgeon was able to breathe on her own although her limbs were paralyzed and she was unable to move her arms, legs or head. (Pridgeon deposition, p. 70)

54. Ms. Pridgeon originally tested positive for Lyme Disease at St. Raphael's Hospital. (Pridgeon deposition, p. 88)

55. Ms. Pridgeon was retested during her hospital stay for Lyme Disease and that test came back negative. (Pridgeon deposition, p. 88)

56. A stool test of Ms. Pridgeon was ordered but she has no recollection of whether a stool test was conducted or the results of it. (Pridgeon deposition, p. 94)

57. There was no stool sample which confirmed the presence of Campylobacter Jejuni bacteria in Ms. Pridgeon. (Report of Kevin M. Cahill, M.D. dated June 29, 2003, p.1 (hereinafter "Cahill report"))

58. The physicians at St. Raphael's Hospital told Ms. Pridgeon that they had found the Campylobacter Jejuni bacteria in her but they did not disclose to her the basis upon which they reached their finding. (Pridgeon deposition, p. 93)

59. There was no evidence in the various tests conducted on Ms. Pridgeon during her hospitalization at St. Raphael's of the presence of Campylobacter infection in her. Report of Dr. Jerome M. Block dated January 31, 2004, p.2 (hereinafter "Block report").

60. Ms. Pridgeon was diagnosed at St. Raphael's Hospital with Guillain-Barre Syndrome, although her physicians did not tell her how she had contracted this illness. (Pridgeon deposition, p. 71)

61. The medical records of plaintiff do not confirm that Campylobacter was ever isolated in Ms. Pridgeon or that Campylobacter was the cause of Ms. Pridgeon's Guillain-Barre Syndrome. (Block report, p. 3)

62. Ms. Pridgeon was placed on antibiotics when she was hospitalized at St. Raphael's Hospital. (Pridgeon deposition, p. 94)

63. There is no evidence that the chicken served to Ms. Pridgeon on American Airlines Flight 121 on June 13, 2000 was contained with Campylobacter which caused her Guillain-Barre Syndrome. (Block report, p. 4)

64. On July 12, 2000, Ms. Pridgeon was moved to the intensive rehabilitation unit at St. Raphael's Hospital where she remained until October 9, 2000. (Pridgeon deposition, p. 72)

65. During the time that Ms. Pridgeon was in St. Raphael's rehabilitation unit, she received two hours of physical therapy and one hour of occupational therapy every day. (Pridgeon deposition, p. 73)

66. Following her discharge to her home in Woodridge, Connecticut, a physical therapist came to her home and assisted Ms. Pridgeon in walking and doing household activities. (Pridgeon deposition, pp. 74 and 74)

9

67. Ms. Pridgeon is still making medical progress in terms of her recovery and stopped getting physical therapy approximately one year ago. (Pridgeon deposition, pp 78 and 79)

68. Ms. Pridgeon is no longer required to use a wheelchair or a walker but she still uses Velcro braces on both legs. (Pridgeon deposition, p. 79)

69. Ms. Pridgeon never wrote a letter of complaint to American Airlines about the meal that she ate, nor did she verbally complain to American Airlines aboard the flight or at any time thereafter about her Chicken Rosemary meal. (Pridgeon deposition, p. 93)

70. Ms. Pridgeon never conducted any investigation to see if anyone else became ill as a result of eating the Chicken Rosemary meal aboard American Airlines Flight No. 121 on June 13, 2000. (Pridgeon deposition, p. 93)

71. Ms. Pridgeon first consulted an attorney in this case in August of 2001. (Pridgeon deposition, p. 95)

72. American Airlines did not receive any complaints from any passengers for food poisoning as a result of any meals served aboard any American Airlines flights from Paris to the United States in June of 2000. (Norgard affidavit, para. 5)

73. Gate Gourmet did not receive any complaint from Ms. Pridgeon or from any other passenger concerning the Chicken Rosemary entrée which was served in the economy

class sections aboard American Airlines' flights as hot meals during the month of June, 2000.

(Faye declaration, paras. 3, 4)

Dated:  New York, New York
         April 5, 2004

          Law Offices of Paul A. Lange

By *[signature]*
      Alison L. McKay
Bar No. CT 22260
alm@lopal.com
80 Ferry Boulevard
Stratford, Connecticut  06615-6079
(203) 375-7724
(203) 375-9397 (facsimile)

- and -

CONDON & FORSYTH LLP

By *[signature]*
      Michael J. Holland
Bar No. CT 22894
mholland@condonlaw.com
685 Third Avenue
New York, New York  10017
(212) 894-6740
(212) 370-4482 (facsimile)

Attorneys for Defendant
AMERICAN AIRLINES, INC.

To:  Timothy L. O'Keefe, Esq.
     Attorneys for Plaintiff
     Kenny, O'Keefe & Usseglio, P.C.
     21 Oak Street
     Hartford, CT  06106
     (860) 246-2700

11