UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LOLITA PRIDGEON,

        Plaintiff,

VS.

AMERICAN AIRLINES, INC.

        Defendant.

Docket No.

3:02 CV 1032 WWE

**REPLY AFFIDAVIT**

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK  )

       Michael J. Holland, being first duly sworn, deposes and says:

       1.     I am a partner of the Firm of Condon & Forsyth LLP, one of the attorneys for defendant American Airlines, Inc. in the above matter.  I have participated actively in the defense of this case since the end of 2002 and I am fully familiar with the facts and circumstances of this case.

       2.     I submit this reply affidavit in support of the motion of defendant American Airlines, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure on the ground that the plaintiff has not sustained a bodily injury as the result of an "accident", as that term is defined in Article 17 of a treaty of United States known as Warsaw Convention. The plaintiff's sustaining of an "accident" is a pre-requisite for liability under the Warsaw Convention, which exclusively governs the rights of plaintiff Lolita Pridgeon against American Airlines.

        3.      I respectfully submit this reply affidavit to highlight for the Court documents which are portions of Ms. Pridgeon's medical records in this case, are documents which are public records, or are Court Orders and discovery responses filed in this case. The documents attached to this reply affidavit are as follows:

        a.      Exhibit "A" hereto is the priority discharge summary of Dr. Moshe Hasbani, plaintiff's expert neurologist, dated June 23, 2000.

        b.      Exhibit "B" hereto is the discharge summary of Dr. John O'Brien, plaintiff's expert physiatrist, dated October 10, 2000.

        c.      Exhibit "C" hereto is the Physician Reportable Diseases – 2004, obtained from the website of the Commissioner of the Department of Public Health (DPH) for the State of Connecticut. The website is as follows:

http://www.dph.state.ct.us/BCH/infectiousdise/pdf/2004physrepdislist.pdf

        d.      Exhibit "D" hereto is the Diagnostic Evaluation of Dr. Stanley Roth, a physician who examined plaintiff on June 21, 2000 at the request of her partner, Dr. Kra. This document was produced by plaintiff as part of her medical records.

e.    Exhibit "E" is the neurology consultation note from St. Raphael's Hospital dated June 23, 2000, produced by plaintiff as part of her medical records.

4.    The parties agreed to a Fourth Amended Scheduling Order, so ordered by the Court on February 25, 2004, which provided in pertinent part at paragraph 7 as follows:

> Plaintiff intends to call expert witnesses at trial. Plaintiff will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed.R.Civ.P. 26(a)(2) by February 29, 2004. Depositions of any such experts will be completed by May 15, 2004.

A copy of the Fourth Amended Scheduling Order is annexed hereto as Exhibit "F".

5.    Exhibit "G" hereto are the answers to interrogatories filed by defendant American Airlines on June 24, 2003. These interrogatory answers identify the American Airlines crewmembers aboard Flight 121 on June 13, 2000.

_____
Michael J. Holland

Sworn to before me this
4th day of November, 2004

_____
Notary Public

MARY ANN ROONEY
NOTARY PUBLIC, State of New York
No. 31-4672706
Qualified in Queens County
Commission Expires May 31, 2006

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

         Mary Ann Rooney, being duly sworn, deposes and says that deponent is not

a party to the action, is over 18 years of age and resides in Queens, New York.  That on

November 4, 2004, deponent served by Federal Express, Priority Overnight Delivery the

within Reply Affidavit of Michael J. Holland upon:

                Timothy L. O'Keefe, Esq.
                Kenny, O'Keefe & Usseglio, P.C.
                21 Oak Street
                Hartford, Connecticut  06106

which is the address designated by said attorneys for service of documents.

                                        Mary Ann Rooney

Sworn to before me this
4th day of November, 2004

_____
Notary Public

        MICHAEL J. HOLLAND
    Notary Public, State of New York
        No. 41-4501283
      Qualified in Nassau County
  Commission Expires August 31, 2005

# EXHIBIT "A"

# HOSPITAL OF ST. RAPHAEL      PRIORITY DISCHARGE SUMMARY



**PATIENT NAME:**      **LOLITA PRIDGEON**
**UNIT NUMBER:**       **05692595**
**ADMISSION DATE:**    **06/23/2000**
**DISCHARGE DATE:**    **None**
**ATTENDING PHYS:**    **MOSHE HASBANI MD**

Procedure Date:     /  /
Admission Date: 06/23/2000
Discharge Date: 07/12/2000
PRIMARY DIAGNOSES:
1.   Guillain-Barre syndrome.
2.   Status post resection of a C4 cavernous hemangioma.
3.   Cervical disk herniation.

HISTORY:  This is a 39-year-old, right-handed white female,
status post cervical operation for a C4 cavernous
hemangioma, removed by Dr. Goodrich approximately three
years ago, and who on June 13, starting having severe
diarrhea upon returning from Paris.  Previously, she had
also been to St. Thomas.  The diarrhea lasted three days but
has since been associated with severe joint pain,
particularly in the knees and ankles.  On the morning of her
admission, the patient had not been able to ambulate and
noted also weakness in the upper extremities, more so
distally than proximally.  The patient denied diplopia,
dizziness, difficulty breathing or swallowing.  She denied
cognitive changes.

Magnetic resonance imaging of the cervical spine had been
stable although it did show a cervical disk at the C4-5 and
C5-6 level.  This was evaluated by Dr. Bloomgarden, Dr.
Arkins, and subsequently also by Dr. Goodrich upon his
return.  All of the neurosurgeons concurred that this is not
contributory to her current neurological problem.

On examination, the patient was alert, in extreme pain in
the lower extremities.  There was no pain upon movement of
the joint which actually improved the pain with motion.  The
cranial nerves were within normal limits.  The strength in
the upper extremities revealed the deltoid to be 5-, biceps
5-, triceps 4-, wrist flexion and extension 4-, small hand
muscles 2 to 3 bilaterally, iliopsoas 2, quadriceps 3-,
anterior tibialis 0 to 1 and gastrocnemius 0 to 1.
Likewise, small muscle movements in the feet were absent.

The deep tendon reflexes were +2 for the right biceps, +3
for the left biceps, absent for the triceps, +3 for the knee
jerks, absent at the ankles.  Plantar responses to

---

**PRELIMINARY UNTIL VERIFIED**           Page 1

# HOSPITAL OF ST. RAPHAEL      PRIORITY DISCHARGE SUMMARY

| | |
|---|---|
| **PATIENT NAME:** | **LOLITA PRIDGEON** |
| **UNIT NUMBER:** | **05692595** |
| **ADMISSION DATE:** | **06/23/2000** |
| **DISCHARGE DATE:** | **None** |
| **ATTENDING PHYS:** | **MOSHE HASBANI MD** |

stimulation were absent.  The sensory examination revealed minimal distal decreased perception to pin in the feet. Cerebellar examination was unremarkable.

The straight leg raising was negative.  There was no limitation of joint movement.

The impression upon admission was that the patient probably had Guillain-Barre syndrome.  She was status post reduction of an intramedullary cavernous hemangioma at the C4 level, and which, in my opinion, was not contributory to her current problem.

Subsequently, multiple evaluations occurred during the day of her admission.  A lumbar puncture was performed.  This showed a normal protein.  There were 9 white cells in one tube and 1 white cell in the next tube.  Nerve conduction studies were performed by Dr. Warman.  There was prolongation of the latencies of the median, peroneal, and tibial nerve.  The latter was the worst with a latency of 10.31 milliseconds.  The sensory latency of the sural nerve was within normal limits.  There were no F waves responses for the median, peroneal, and tibial nerves.  This was on the left side.

This further confirmed the impression of Guillain-Barre syndrome.  The patient was placed on IVIG treatment on the day of admission.  She was given 30 grams for the first two days and 20 grams for the next three days.

Throughout the first few days, the patient's neurological systems worsened and she developed essentially almost a total quadriplegia.  There was some minimal weakness of the facial musculature.  The respiratory parameters showed some decline, though at the lowest, her vital capacity was 1100 cc.

Her course was not complicated and she showed some stabilization within four to five days after admission.  She then started improving on day #8 or #9 after admission.  In the interim, she had lost all her reflexes.  Her neurological examination on July 11 revealed the strength in

# HOSPITAL OF ST. RAPHAEL        PRIORITY DISCHARGE SUMMARY

| | |
|---|---|
| **PATIENT NAME:** | **LOLITA PRIDGEON** |
| **UNIT NUMBER:** | **05692595** |
| **ADMISSION DATE:** | **06/23/2000** |
| **DISCHARGE DATE:** | **None** |
| **ATTENDING PHYS:** | **MOSHE HASBANI MD** |

the right upper extremity to be 3+ for the deltoid, biceps.
There was pronation and supination of the right forearm.
There was minimal flexion of the fingers.  In the left upper
extremity, 2 to 3 in the deltoid and proximal shoulder
muscles.  The biceps showed a +1 contraction.  There was
some minimal flexion and extension of the fingers noted
also.  In the lower extremities, only trace movement was
noted in the quadriceps.

During the early phase of her hospitalization, the patient
was also treated with doxycycline 100 mg b.i.d. for a
suspected Lyme disease, this particularly since the initial
titers were positive, but then subsequently the Western blot
was negative and doxycycline was stopped.

The patient was catheterized during her hospitalization and
the catheter was removed on July 10, 2000.  She had
developed a urinary tract infection with fungal infection
and the patient was treated with _____ which cleared the
infection readily.

Her medications upon discharge to the Intensive
Rehabilitation Unit includes:

1.    Serax 10 mg p.o. q.8h. p.r.n. anxiety.
2.    Restoril 15 mg at bedtime.
3.    Ibuprofen 600 mg p.o. q.6h. p.r.n. pain.
4.    Neurontin 600 mg b.i.d.
5.    Pepcid 20 mg p.o. b.i.d.
6.    Heparin 5000 units subcu b.i.d.
7.    Senokot two tablets p.o. q.d.
8.    Thiamine 100 mg p.o. q.d.
9.    Multivitamin one tablet q.d.
10.   Ferrous sulfate 325 mg p.o. q.d.
11.   Zoloft 50 mg p.o. q.d.
12.   K-Dur 20 mEq p.o. q.d.

Prior to her hospitalization, the patient had developed
severe anxiety and fear which were supported by the
psychiatry liaison, the pastor, and the medical staff.  I
believe that she has done quite well and it is hopeful that
she will have further and very substantial recovery over the

## HOSPITAL OF ST. RAPHAEL        PRIORITY DISCHARGE SUMMARY

| | |
|---|---|
| **PATIENT NAME:** | **LOLITA PRIDGEON** |
| **UNIT NUMBER:** | **05692595** |
| **ADMISSION DATE:** | **06/23/2000** |
| **DISCHARGE DATE:** | **None** |
| **ATTENDING PHYS:** | **MOSHE HASBANI MD** |

next few weeks during her stay at the IRU.

Dictated by Moshe Hasbani, MD
707
D:07/11/2000
T:07/11/2000
JOB: 9559

```
cc: 421 - Moshe Hasbani, MD
    750 - Isaac Goodrich, MD
    337 - Gordon Hutchinson, MD
    367 - Ernest Moritz, MD
    354 - Siegfried Kra, MD
    743 - Thomas Arkins, MD
```

---

**PRELIMINARY UNTIL VERIFIED**         Page 4

EXHIBIT "B"

Hospital of Saint Raphael
1450 Chapel Street
New Haven, CT    06511

O'Brien,Jo Discharge Summary-MD

Pridgeon,Lolita                                    MRN:    05692595
    Age: 40Y   Sex: F                             Visit:  05692595-0009
Visit Type: IP                          Discharge Date:  10 Oct 2000
------------------------------------------------------------------------
Unscheduled O'Brien,Jo MDDischSumm
Event Time: Tue, 10 Oct 00  1748                    Status: complete

Mon,  3 Dec 01  0824   Documented by John W. O'Brien, MD

Dictation Date    : Tue, 10 Oct 2000  1748
Transcribed Date  : Tue, 10 Oct 2000  1749
Attending/Surgeon: John W. O'Brien, MD
Transcribed by    : Outside Transcription
Discharge Summary: Procedure Date:    /  /
                   Admission Date: 07/12/2000
                   Discharge Date: 10/10/2000
                   DISPOSITION:   She is being discharged to the IRU.

                   DISCHARGE MEDICATIONS:
                   1.    Serax 10 mg q.h.s.
                   2.    Restoril 30 mg q.h.s.
                   3.    Zoloft 150 mg p.o. q.d.
                   4.    Multivitamins.

                   DISCHARGE DIAGNOSIS:
                   1.    Guillain-barre.
                   2.    Lyme disease.
                   3.    Removal of spinal cord tumor in 1997.

                   DISCHARGE INSTRUCTIONS:  R.N. for monitoring cardiopulmonary
                   status, medical complications, evaluate PT seven times a
                   week and OT five times a week.  She is
                   discharged with a hospital bed, walker, wheelchair, commode,
                   and sliding board.

                   NARRATIVE:   The patient is a 39-year-old female admitted to
                   Hospital of St. Raphael's on June 23rd.  She was in France,
                   came home, had some GI distress.  She had some burning pain
                   in her feet, was seen in the emergency room and was sent
                   home.  She woke up paralyzed, fell while getting out of bed.
                   Subsequent to that she was brought to the emergency room and
                   evaluated and noted to have Guillain-barre syndrome.  She
                   was placed on steroids and gamma globulin, was admitted to
                   Intensive Care Unit.  She has a past history of removal of a
                   C4 cavernous hemangioma with some residual left sided upper
                   extremity weakness. She was maintained in the Intensive Care
                   Unit and was noted to be originally quadriplegic.  She
                   eventually gained some neurological function and was seen
                   for rehabilitation.   She was admitted to the rehabilitation
                   unit on 7/12/00.

                   PAST MEDICAL HISTORY:    She had the tumor resection as
                   previously noted.

                   PHYSICAL EXAMINATION: Temperature: 96.8.  Pulse: 98.
                   Respirations: 16.  Blood pressure: 118/81.  HEENT:
                   Normocephalic, atraumatic.  Pupils were equal, round and
                   reactive to light.  Extraocular movements intact.  Fundi not

Unscheduled O'Brien,Jo MDDischSumm -- cont'd

visualized.  Oral dentition was intact.  Band-aid on the outside covering a jugular catheter insertion site on the right side.  Neck:  Supple.  Chest:  Clear to A&P.  Cor: Regular rate and rhythm with no extra beats appreciated. Abdomen:  Soft.  Foley catheter had been recently removed. Extremities:  No evidence of deep venous thrombosis in the lower extremities.  Pulses were noted to be bounding. Neurological revealed neck strength was normal.  Shoulders revealed right 90 degrees forward flexion and 60 degrees abduction.  On the left, it was 60 degrees of forward flexion and 30 degrees abduction.  She contracted her elbow against gravity but not to full range.  She had minimal wrist motion.  She did have some isolated hand motion and finger motion as well on the right more so than on the left. On the left, elbow could flex only with gravity eliminated and she had minimal movement there.  In regards to legs, she had trace extension, trace quadriceps, trace adductors, trace hip flexion.  Hamstrings were also noted to be trace and there was no ankle motion at this time.  Sensation appeared to be grossly normal.

LABORATORY DATA:
It was noted that she had cervical disk protrusion, C4-5 but unchanged since the study of 1997.
Cranial MRI revealed a front hemangioma, otherwise unremarkable.
Her electrolytes were unremarkable.
She has had some hypokalemia.
Her basic metabolic panel was noted that on July 10th was completely normal and was normal throughout her hospital course.
Urinalysis were noted to be essentially normal throughout her hospital course with one episode of some nitrates. Albumin was noted to be low but actually came up to 4.1 towards the end of July.  It was noted to be 3.3 in August. Her liver function tests were noted to be slightly elevated, however, had normalized on August 3rd, noted to have an AST of 27, ALT of 28.  Upon admission, they were noted to be 96 and 164 respectively.  Her creatinine was noted to be slightly on the low side.
She did have a E. coli with sensitivity that was noted.

Her CBC revealed that her white count originally noted to be high at 11.7 and stabilized down to 5.9.  Her H&H upon admission were 12 and 35.3 and around the 19th of September were noted to be 13.8 and 40.6.  MCV was normal.  Her MCH was 31.2.  Platelet count was 271.

PLAN UPON ADMISSION:  Plan upon admission was to improve her as much as possible from  a functional level and she was involved in PT and OT and did very well in all areas.  While hospitalized, she underwent a venous ultrasound which was noted to be negative.  There was a question of a deep venous thrombosis as she had some calf pain.  There was no evidence of deep venous thrombosis.  From the physical rehabilitation standpoint, while in the rehabilitation unit, she received more than three hours of therapy a day and she did exceedingly well.  She went from being quadriparetic as previously mentioned to be able to become markedly independent in all areas of ADLs and in fact, markedly more independent in areas of ADL which included ambulation.  She was seen by New England _____ and she had knee, ankle, foot orthoses ordered.  It was noted at the time of discharge, that the strength that she had in the digits were in the 1-2

Unscheduled O'Brien,Jo MDDischSumm -- cont'd

range bilaterally, in the wrist it was noted to be 2-3 and more proximally, it was 4/5 on the right and 3/5 on the left. In regards to her PT standpoint, it was noted that she was able to transfer with supervision to a sliding board on and off the toilet, she had good sitting, standing balance, she had good dynamic balance, she had good standing to static dynamic balance with bilateral _____. Her bed mobility to rolling with supervision, supine to sit on hard surface 75% of the time. Sit to supine on a mat with supervision on a bed with assistance for lower extremities around 50% of the time. Sit to stand required minimal assist of one and car transfers required minimal assist of one. Her gait revealed that she was walking with bilateral _____ 250 feet with contact guard only and patient advancing both lower extremities with equal step length and able to manage a rolling platform walker except turning and to sit down. She did receive the equipment as previously mentioned. She made a marked improvement by her prolonged stay at the Hospital of St. Raphael's rehabilitation unit and she was discharged. Multiple family meetings were held including the patient, her mother who is extremely supportive and stayed with her throughout her hospital stay as well as her significant other, Dr. Siegfried Kra was also quite involved in her care. Family meetings did take place and the decision was made to discharge. The patient was able to return to her home and her mother will be staying with her for approximately another ten days prior to returning to Texas. Her level of independence had markedly improved, however, she still has a long way to go in terms of her overall functional status. Her biggest deficit at this point appears to be her lack of return distally both in the hands and the feet, the feet is not so important as the hands as she had marked difficulty with toileting and pulling up her clothing for toileting and wiping herself. Those will be taken care of by the home health aide as well as her mom as well as her significant other as she continues to improve dramatically.

It must be noted that prior to her leaving, Dr. Hasbani did order some laboratory tests and _____ antibody, serum protein electrophoresis and other studies which are pending will be followed up by Dr. Hasbani when she sees him in follow-up. She is instructed to return to my office in three weeks for follow-up.


Dictated by John O'Brien, MD
007
D:10/10/2000
T:10/10/2000
JOB: 4563

    cc: 1541 - John O'Brien, MD
        421 - Moshe Hasbani, MD
        354 - Siegfried Kra, MD
        750 - Isaac Goodrich, MD

--------------------------------------------------------------------------

Verified by: O'Brien,John W. MD 12/03/2001 8:24 am

**EXHIBIT "C"**

# Physician Reportable Diseases—2004

The Commissioner of the Department of Public Health (DPH) is required to declare an annual list of reportable diseases. Changes for 2004 are noted in **bold** and with an asterisk (*).

Each report (by mail or telephone) should include the: full name and address of the person reporting, attending physician, disease being reported, and full name, address, race/ethnicity, sex and occupation of the person affected. The reports should be sent in envelopes marked "CONFIDENTIAL".

**Category 1: Reportable immediately by telephone on the day of recognition or strong suspicion of disease.** On weekdays, reports are made to the DPH and local health departments; in the evening and on weekends, to the DPH. A Confidential Disease Report (PD-23) or more disease-specific report form should be mailed to both the DPH and local health departments within 12 hours.

Chickenpox
  • admission to hospital, any age
  • adults > 18 years, any clinical setting
Cholera
Diphtheria
Measles
Meningococcal disease
Outbreaks:
  Foodborne outbreaks (involving > 2 persons)
  Institutional outbreaks
  Unusual disease or illness (1)
Pertussis
Poliomyelitis
Rabies (human and animal)
Rubella (including congenital)    *(list continued in next column)*

SARS-CoV*
*Staphylococcus aureus* disease, reduced or resistant
  susceptibility to vancomycin (2)
Tuberculosis
Yellow Fever

---

*Diseases that are possible indicators of bioterrorism.*

| | |
|---|---|
| Anthrax | Ricin Poisoning |
| Botulism | Smallpox |
| Brucellosis | Staphylococcal enterotoxin B |
| Outbreaks of unusual disease | pulmonary poisoning |
| or illness (1) | Tularemia |
| Plague | Venezuelan equine encephalitis |
| Q fever | Viral hemorrhagic fever |

---

**Category 2: Reportable by mail within 12 hours** of recognition or strong suspicion to both the DPH and local health departments.

Acquired immunodeficiency syndrome (2,3)
Babesiosis
Campylobacteriosis
Carbon monoxide poisoning (4)
Chancroid
Chlamydia (*C. trachomatis*) (all sites)
Chickenpox
Chickenpox-related death
Creutzfeldt-Jacob disease, < 55 years of age
Cryptosporidiosis
Cyclosporiasis
Ehrlichiosis
Encephalitis
*Escherichia coli* O157:H7 gastroenteritis
Gonorrhea
Group A streptococcal disease, invasive (5)
Group B streptococcal disease, invasive (5)
*Haemophilus influenzae* disease, invasive, all serotypes (5)
Hansen's disease (Leprosy)
Hemolytic-uremic syndrome
Hepatitis A, C, Delta, Non-A/Non-B
Hepatitis B
  • acute infection
  • HBsAg positive pregnant woman
HIV-1 exposure in infant born 1/1/2001 or later (2,6)
HIV-1 infection in: (2)
  • person with active tuberculosis disease
  • person with latent tuberculosis infection (history or
    tuberculin skin test > 5mm induration by Mantoux technique)
  • child < 13 years of age
  • person > 13 years of age not included above (7)
Lead Toxicity (blood lead > 20 µg/dL)

Legionellosis
Listeriosis
Lyme disease
Malaria
Mercury poisoning
Mumps
Neonatal herpes (<1 month of age)
Occupational asthma
Pneumococcal disease, invasive (5)
Reye syndrome
Rheumatic fever
Rocky Mountain spotted fever
Salmonellosis
Shiga toxin-related disease (gastroenteritis)
Shigellosis
Silicosis
*Staphylococcus aureus* methicillin-resistant disease,
  invasive, community acquired (5,8)
*Staphylococcus epidermidis* disease, reduced or
  resistant  susceptibility to vancomycin (2)
Syphilis
Tetanus
Trichinosis
Typhoid fever
Typhus
Vaccinia disease
  • persons not vaccinated
  • persons vaccinated with the following manifestations:
    autoinoculation, generalized vaccinia, eczema vaccinatum,
    progressive vaccinia, or post-vaccination encephalitis
*Vibrio parahaemolyticus* infection
*Vibrio vulnificus* infection

---

1  Individual cases of "significant unusual illness" are also reportable.    2 Report only to the State.    3 CDC case definition.
4  Includes person being treated in hyperbaric chambers for suspect CO poisoning.
5  Invasive disease: confirmed by isolation from blood, CSF, pericardial fluid, pleural fluid, peritoneal fluid, joint fluid, bone, other normally sterile sites, and
   intraoperative swab from a normally sterile site or normally sterile tissue obtained during surgery.
6  Exposure" includes infant born to known HIV-infected mother.
7  Persons with HIV infection and active tuberculosis or latent tuberculosis infection (history of tuberculin skin test = 5 mm induration by Mantoux technique), or
   children (<13 years of age) should be reported using full name and street address. Persons =13 years of age. should be reported by full name and street address
   or by state-specified unique identifier (UI). To make the UI, the first 3 letters of the patient's last name, date of birth, gender and race need to be reported.
8  Community-acquired: infection present on admission to hospital and person has no previous hospitalizations or regular contact with the health-care setting.

**How to report:** The PD-23 is the general disease reporting form and should be used if other specialized forms are not available. Specialized reporting forms from the following programs are available: HIV/AIDS Surveillance (860-509-7900), Sexually Transmitted Disease Program (860-509-7920), the Pulmonary Diseases Program (860-509-7722), or the Occupational Health Surveillance Program (860-509-7744). Forms may be obtained by writing the Department of Public Health, Epidemiology Program, 410 Capitol Ave., MS#11EPI, P.O. Box 340308, Hartford, CT  06134-0308 (860-509-7994); or by calling the individual program.

**Telephone reports** of Category 1 disease should be made to the local director of health for the town in which the patient resides and to the Epidemiology Program (860-509-7994). Tuberculosis cases should be directly reported to the Pulmonary Diseases Program (860-509-7722). For the name, address, or telephone number of the local Director of Health for a specific town contact the Office of Local Health Administration (860-509-7660). **For public health emergencies, an epidemiologist can be reached nights and weekends through the DPH emergency number (860-509-8000).**

**EXHIBIT "D"**

①

**STANLEY ROTH, M.D., P.C.**
1423 CHAPEL STREET
NEW HAVEN, CONNECTICUT 06511
TELEPHONE 203-562-5197

INTERNAL MEDICINE
CARDIOPULMONARY DISEASES

DIPLOMATE AMERICAN BOARD
OF INTERNAL MEDICINE

## DIAGNOSTIC EVALUATION

NAME _Bridgen, Lita_    S M W D Sep

DATE OF BIRTH _4/16/61_  AGE _39_  REFERRED BY _D-Kra_  DATE _6/21/00_

### PRESENT ILLNESS

A week ago returned from France — got severe diarrhea my several hours later got severe diarrhea c̄ blood streaks — then knew ṗ onset got severe pain in low back — both knees got better & the ankle today c̄ pain in both lower legs — knee & ankles — severe. Also low back — moderate. pain worse sitting or lying. no swelling noted. Had normal BM today.

Brain op for hemangioma 1987

PAST HISTORY
  Surgery
  Injuries
  Hospitalizations
ILLNESS
  Rheumatic fever/ scarlet fever
  Heart disease/ hypertension
  (Pneumonia)/pleurisy/TB    ± age 10
  Asthma/cancer/AIDS
  Diabetes/lung disease/VD

**EXHIBIT "E"**

Lolita Pridgeon

**Hospital of Saint Raphael**
A member of the Saint Raphael Healthcare System
New Haven, Connecticut 06511

## Progress Notes

6/23/00  <u>Neurology consult</u>

39 yo wf Rhanded s/p cervical op for Ly Cavernous hemangioma removed by Dr Goodrich & who on 6/13 started having severe diarrhea upon returning from Paris, Previously also in St. Thomas. The diarrhea lasted 3 days, but has been since associated persistent joint pain in the knees & ankles. This now pt has not been able to ambulate & with also weakness in LEE's — dist > prox —
She denies diplopia, upper cognition changes changes, dizzyness, difficulty breathing or swallowing —
MRI of C spine has been stable — p/o — MRI of Thoracic & lumbar spine are wl —
Pt evaluated yesterday by Drs Bloomgarden & Hutchinson —

On exam Alert — in extreme pain in LE's — ⊖ pain w movement of joints which actually improve w movement
CN WNL                                        R            L

| EXT's | Stength | | R | L |
|---|---|---|---|---|
| | | Deltoid | 5⁻ | 5⁻ |
| | | Biceps | 5⁻ | 5⁻ |
| | | Triceps | 4⁻ | 4⁻ |
| | | Wrist + fing flx | 4⁻ | 4⁻ |
| | | Small hand ⊕ | 2-3 | 2-3 |
| | | Iliopsoas | 2 | 2 |
| | | Quad | 3⁻ | 3⁻ |
| | | ant Tib | 0-1 | 0-1 |
| | | gast | 0-1 | 0-1 |

DTR's



F-4 Rev. 1-86

**EXHIBIT "F"**

FILED

FEB 23  19 PM '04

U.S. DISTRICT COURT
AT ... CONN.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LOLITA PRIDGEON

        Plaintiff,

                              Docket No.

vs.

                              3:02 CV 1032 GLG

AMERICAN AIRLINES, INC.

        - Defendant

### FOURTH AMENDED SCHEDULING ORDER

    Pursuant to the agreement of counsel, the dates set forth in the Amended Scheduling Order are hereby extended.  The dates are now as follows:

    1.      Discovery, including depositions of expert witnesses pursuant to Fed.R.Civ.P. 26(b)(4), will be commenced by March 15, 2004 and be completed by May 31, 2004.

    2.      Initial discovery of both parties have already been filed.

    3.      Plaintiff has responded to defendant's Request for Production of Documents and Things dated June 25, 2003.

          Plaintiff's deposition has been completed.

          A physician examination of the plaintiff will be completed before March 31, 2004.

FILED  2 07 PM '04

SO ORDERED.

_Gerard L. Goettel_
Gerard L. Goettel, USDJ

2/25/04

6.      The parties anticipate that the plaintiff will require a total of five depositions of fact witnesses and that the defendant will require a total of five depositions of fact witnesses. The depositions will commence May 1, 2004 and be completed by May 31, 2004.

7.      Plaintiff intends to call expert witnesses at trial. Plaintiff will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed.R.Civ.P. 26(a)(2) by February 29, 2004. Depositions of any such experts will be completed by May 15, 2004.

8.      Defendants intend to call expert witnesses at trial. Defendant will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed.R.Civ.P. 26(a)(2) by March 31, 2004. Depositions of any such experts will be completed by May 31, 2004.

9.      A damage analysis will be provided by March 31, 2004.

10.      Dispositive Motions will be filed on or before June 30, 2004.

11.      Joint Trial Memorandum to be filed July 31, 2004.

12.      The case will be ready for trial on October 4, 2004.

So Ordered:

_____

Honorable Gerard L. Goettel



Submitted by:

PLAINTIFF,
LOLITA PRIDGEON

BY: _____
TIMOTHY L. O'KEEFE CT15005
Attorneys for Plaintiff
Kenny, O'Keefe & Usseglio, P.C.
21 Oak Street, Suite 208
Hartford, CT 06106
(860) 246-2700

To:    Alison L. McKay  CT22260
       Attorneys for Defendant
       Law Offices of Paul A. Lange
       80 Ferry Boulevard
       Stratford, CT 06615-6079
       (203) 375-7724

       Michael J. Holland  CT22894
       Attorneys for Defendant
       Condon & Forsyth LLP
       685 Third Avenue
       New York, NY 10017
       (212) 490-9100

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was mailed; postage prepaid this 20th day of

February, 2004 to the following:

Alison L. McKay, Esq.
Law Offices of Paul A. Lange
80 Ferry Boulevard
Stratford, CT 06615-6079

Michael J. Holland, Esq.
Condon & Forsyth, LLP
685 Third Avenue
New York, NY 10017

TIMOTHY L. O'KEEFE
Commissioner of the Superior Court

**EXHIBIT "G"**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------X

LOLITA PRIDGEON,

       Plaintiff,                      Docket No.:3: 02 CV1032 GLG

-against-

AMERICAN AIRLINES, INC. AND         June 24, 2003
SKY CHEFS, INC. NK/A
LSG LUFTHANSA SERVICE HOLDING AG,
LSG SKY CHEFS, AND DEUTSCHE
LUFTHANSA AG

       Defendants.

-----------------------------------------------------X

## DEFENDANT AMERICAN AIRLINES, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant American Airlines, Inc. by and through their undersigned counsel hereby responds to Plaintiffs' First Set of Interrogatories dated April 24, 2003 as follows:

1.    Please state the following:

      (a)    your full name, and any other name(s) by which you have been known;

      (b)    your position of employment;

      (c)    your business address.

**ANSWER:**

      (a)    Heike Maul

      (b)    Senior Claims Analyst

      (c)    American Airlines, Inc.,
              4333 Amon Carter Blvd., 5th Floor,
              DFW Airport, TX 75261-9616

2.     State the names and addresses of all persons known to you who were present at the time of the incident alleged in the Complaint?

**ANSWER:**   Defendant has no information pertaining to who might have been present at the time of the incident alleged in Plaintiff's Complaint.

3.     Did American Airlines, Inc. operate a flight or flights on June 13, 2000 from France to John F. Kennedy International Airport?

**ANSWER:**  Yes.

4.     State the names and addresses of all American Airlines, Inc. personnel, employees, agents and/or servants who were present on American Airlines Flight 121 enroute from France to John F. Kennedy International Airport on June 13, 2000?

**ANSWER**:    The flight crew for the flight in question consisted of the following persons, all of whom are still employed by American Airlines, Inc.: Michael Chulkovs, Andrew Jillions, John Cothran, Michele Lake Vermoortel, S. MaCauley, Herve Drouard, Sandra Albacete-Stevenson, Jeffrey A. Lonsinger, Pamela Luacella, Diane Mann, Pedro Trelles, Janet Austin, Sarah Taber.

5.     As to each individual named in response to Interrogatory Number 4, state whether to your knowledge, or the knowledge of your attorney, such individual has given any statement or statements concerning the subject matter of the Complaint in this lawsuit.  If your answer to this Interrogatory is affirmative, state also:

(a)    the date on which the statement or statements were taken;

(b)    the names and addresses of person or persons who took such statement or statements;

(c)    the names and addresses of any person present when such statement or statements were taken;

(d)    whether such statement or statements were written, made by recording device or taken by court reporter or stenographer;

(e)    the names and addresses of each person having custody or a copy or copies of such statement or statements.

**ANSWER:**    Defendant American Airlines, Inc. knows of no statements responsive to Interrogatory 5.

6.    According to your records, was the Plaintiff, Lolita Pridgeon, a passenger on American Airlines flight 121 enroute from France to John F. Kennedy International Airport on June 13, 2000?

**ANSWER:**  Defendant American Airlines, Inc. cannot confirm that Plaintiff was a passenger since it no longer has a flight manifest for that date.

7.    Please identify the food and beverage service provider for American Airlines flight 121 enroute from France to John F. Kennedy International Airport on June 13, 2000?

**ANSWER:**  Gate Gourmet International was the caterer for the flight in question.

8.    Please identify the food products served to passengers on American Airlines flight 121 enroute from France to John F. Kennedy International Airport on June 13, 2000?

**ANSWER:**    Chicken Rosemary was served as the main dish on Flight 121 on June 13, 2000.

9.    If, at the time of the incident alleged in the Complaint, you were covered by insurance policy under which an insurer may be liable to satisfy part or all of a judgment or reimburse you for payments to satisfy part or all of a judgment, state the following:

(a)    the name(s) and address(es) of the insured(s);

(b)    the amount of coverage under such insurance policy(ies);

(c)    the name(s) and address(es) of the insurance company(ies).

**ANSWER:**    Gate Gourmet International, Inc. has accepted American Airlines, Inc.'s tender of this matter and they are insured under an Airline Aviation General third party liability policy with coverage up to $2 billion per occurrence.

10.    If, at the time of the incident which is the subject of this lawsuit, you were protected against the type of risk which is the subject of this lawsuit by excess umbrella insurance, or any other insurance, please state:

      (a)    the name(s) and address(es) of the insured(s);

      (b)    the amount of coverage under such insurance policy(ies);

      (c)    the name(s) and address(es) of the insurance company(ies).

**ANSWER:**    Gate Gourmet International, Inc. has accepted American Airlines, Inc.'s tender of this matter and they are insured under an Airline Aviation General third party liability policy with coverage up to $2 billion per occurrence.

Dated:      June 24, 2003

        DEFENDANT,
        AMERICAN AIRLINES, INC.

        BY:   *Alison L. McKay*
            Alison L. McKay CT22260
        Law Offices of Paul A. Lange
        80 Ferry Boulevard
        Stratford, CT  06615-6079
        (203) 375-7724
        (203) 375-9397

          -  and-

        CONDON & FORSYTH LLP
        Michael J. Holland, Esq.
        685 Third Avenue
        New York, New York  10017
        (212) 490-9100

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Response to Interrogatories was mailed on

June 24, 2003 to the following:


        Timothy L. O'Keefe, Esq.
        Kenny, O'Keefe & Usseglio, P.C.
        21 Oak Street
        Hartford, CT  06106

        Steven E. Arnold, Esq.
        Stanger & Arnold, LLP
        29 South Main Street, Suite 325
        West Hartford, CT  06107

Alison L. McKay