UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*********************************
LOLITA PRIDGEON

    Plaintiff : DOCKET NO.
: 3: 02 CV1032 WWE
VS.

AMERICAN AIRLINES, ET AL. : NOVEMBER 30, 2004

    Defendants
************************************

SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

The plaintiff, Lolita Pridgeon, respectfully submits this Supplemental Memorandum of Law in support of her Opposition to the Defendant's Motion for Summary Judgment.

The defendant's Motion for Summary Judgment and in particular, its Reply Memorandum of Law, contains several pages of a repeated argument that lacks evidentiary citation and attempts to misdirect this Court's attention from the issue at hand: whether there is a genuine issue of material fact with respect to the two issues in the defendant's Motion for Summary Judgment. Specifically, the defendant seeks to shift the court's focus away from the pertinent issues by: 1) repeatedly stating that the plaintiff never filed a complaint with American Airlines regarding the food served to her; 2) attacking the credibility of the plaintiff; 3) attacking the qualifications of the plaintiff's expert, Dr. Golden; and 4) claiming that there is no evidence to indicate that camplyobacter jejuni ("c. jejuni") caused the plaintiff's contraction of Guillain-Barre Syndrome ("GBS"). These arguments have no bearing on whether Ms. Pridgeon's severe injuries constitute an "accident" under the Warsaw Convention, are not appropriately raised in a Motion for Summary Judgment and are simply not supported by the evidence. The plaintiff's Memorandum dated October 22, 2004 clearly raises a question of fact as to whether her contraction of GBS after flying on the defendant's airline constitutes an "accident" under the Warsaw Convention and further whether the defendant actually took "all necessary measures" to prevent the harm it caused to Ms. Pridgeon.

Both the defendant's Motion for Summary Judgment and Reply Memorandum read more like trial briefs, discussing the weight of certain evidence and credibility of witnesses. All of the conclusions made by the defendant in each of its submissions are issues properly reserved for a jury after a fair trial. The defendant fails to recognize that summary judgment is a <u>harsh</u> <u>remedy</u> to be granted only where there are <u>no</u> issues of material fact. See <u>Flli Moretti Cereali v. Continental Grain Co</u>., 563 F. 2d 563, 565 (2d Cir. 1977)(emphasis added). The defendant would have this Court weigh the evidence/argument discussed in its briefs to determine the truth. As this court is aware, however, its role is solely to determine whether a genuine issue of material fact exists. See <u>Price v. KLM-Royal Dutch Airlines</u>, 107 F.Supp. 2d 1365, 1367 (2000).

In addition, the defendant somehow ignores that several courts in the Second Circuit have held that the service of an in-flight meal or beverage which results in harm to a passenger (such as foodborne illness) is an "accident" for the purposes of Warsaw Convention liability. Furthermore, the expert witnesses that Ms. Pridgeon has disclosed in connection with this case support the conclusion that her illness was caused by the defendant's service of *c. jejuni* infected chicken on June 13, 2000. Finally, the defendant has not provided the court with adequate proof to sustain its burden of proving that it took "all necessary measures" to prevent the harm that it caused to Ms. Pridgeon.

Accordingly, as set forth in the plaintiff's Memorandum in Opposition and more fully below, this Court should deny the defendant's Motion for Summary Judgment and should not

3

impose, at this juncture, a limit on Ms. Pridgeon's damages pursuant to Article 20 of the Warsaw Convention.

## ARGUMENT

### I. **LOLITA PRIDGEON'S INJURIES AND LOSSES WERE SUSTAINED AS THE RESULT OF AN "ACCIDENT" UNDER THE WARSAW CONVENTION**

#### a. The irrefutable medical facts establish that Ms. Pridgeon sustained an accident

Despite the fact that the irrefutable medical facts demonstrate that Ms. Pridgeon sustained an accident under the Warsaw Convention, the defendant utilizes its Reply Brief in an effort to discredit Ms. Pridgeon's expert. Ms. Pridgeon has disclosed Dr. Marjorie Golden, a physician board certified in infectious diseases, as an expert witness in this case. Unlike the defendant's experts, Dr. Golden was actually involved in treating Ms. Pridgeon at The Hospital of St. Raphael in July 2000. It is Dr. Golden's opinion, based upon a reasonable degree of medical certainty, that Ms. Pridgeon's GBS was caused by an infection with *c. jejuni* acquired through the ingestion of undercooked chicken on defendant's Flight 121. Dr. Golden bases her opinion on Ms. Pridgeon's undisputed testimony, her treatment of Ms. Pridgeon, her exhaustive review of Ms. Pridgeon's medical records, her experience as a physician board certified in infectious diseases and her research, review and understanding of the relevant medical literature. Dr. Golden is certainly more qualified to give an opinion in this case than the defendant's experts who never treated Ms. Pridgeon and are not board certified in infectious diseases.

The defendant's Reply Brief contains numerous red herrings regarding the medical facts of this case. First, it leads one to believe that there is no mention whatsoever of camplyobacter causing Ms. Pridgeon's GBS until well after she filed her lawsuit. This is simply not true. There are several references in the medical record that indicate her medical providers' strong suspicion that Ms. Pridgeon's illness had, in fact, been triggered by an ingestion of c.jejuni. For instance, on June 23, 2000, the infectious disease fellow noted that "campylobacter jejuni is a significant cause of travelers diarrhea." See Medical Report dated 6/23/00 attached hereto as Exhibit A. Likewise, in a Progress Note dated June 24, 2000 from an Infectious Disease Consult, the physician noted "ID trigger to GBS – most likely in this setting is diarrheal illness (camplyobacter most common trigger documented to GBS)." See Medical Report dated 6/24/00 attached hereto as Exhibit B. Another Note from June 24, 2000 indicates the following: "… probably GBS? p campylobacter." See Medical Report dated 6/24/00 attached hereto as Exhibit C. Moreover, on July 1, 2000, Dr. Golden first treated Ms. Pridgeon and indicated in her record that she had "GBS probably secondary to campylobacter." See Medical Report dated 7/1/00 attached hereto as Exhibit D.

Second, the defendant makes the flawed claim that because there is no mention of the tainted meal in Ms. Pridgeon's medical record, it cannot then be the cause of her onset of GBS. During her deposition, Dr. Golden explained that when she treated Ms. Pridgeon,

> she was in an incredible amount of pain. It wouldn't surprise me that she omitted really what she probably thought was an irrelevant detail. At the time she was admitted to the emergency room, she was a young woman who was almost paralyzed, who was almost undoubtedly petrified, and I think it's reasonable that she would have

5

omitted details. In my experience, people omit details from their medical history unintentionally all of the time.

See Golden Depo at 24-25 (20-25; 1-4). Moreover, Dr. Golden explained that at the time, Ms. Pridgeon probably "did not think there was any link between the two events." Id. at 25 (9-10). The defendant's repeated notation that there is a lack of mention of the meal in the medical records ignores the severity of Ms. Pridgeon's injuries, the fact that she is a lay person who would not have considered a link at a time when she was most concerned about being paralyzed, and that medical professionals make differential diagnoses on a daily basis.

Third, the defendant argues that the absence of complaints of illness made by any other passengers somehow demonstrates that Ms. Pridgeon's meal could not have been tainted. That argument, of course, completely ignores the court's admonition in the Manufacturers case regarding Alitalia's position that the subject incident was the first armed robbery it had experienced and that it had shipped sixteen consignments of currency over eighteen months without incident. See 429 F.Supp. at 968. In other words, whether or not another passenger on Flight 121 became ill or reported becoming ill is irrelevant to the issue of whether the defendant took adequate measures to prevent Ms. Pridgeon's harm. More importantly, however, this argument ignores Dr. Golden's testimony on this issue in which she explained:

> There is a huge variability in susceptibility to illness, so we could all eat something that was contaminated and not all necessarily get sick. So that's the first part. The second thing is lots of people have self-limited gastroenteritis and never report it. You know, most cases of camplyobacter are self-limited. Most people never go see their doctor at all, and so we don't have the information of whether anybody else had

6

> any GI illness that was just self-limited. So certainly the absence of knowing that there were other people sick doesn't really change my general sense.

See Golden Depo at p. 74 (9-19). Essentially, the defendant's argument demonstrates its lack of understanding of the rarity of the onset of GBS and the fact that a number of people could have ingested *c. jejuni* on Flight 121 and not have become ill at all; much less contract GBS as a result.

Finally, the defendant claims that the only way to make a diagnosis of GBS is through a stool sample or serological evidence. According to Dr. Golden, it is not scientifically necessary to have serological testing or a stool culture to draw the medical connection from the tainted chicken meal that the defendant served to Ms. Pridgeon on June 13, 2000 to her GBS illness. Id. at p. 76 (15-21). In fact, Dr. Golden explained that her diagnosis of camplyobacter is based on what Ms. Pridgeon told her and "on her history of bloody diarrhea associated with high fever and arthritis which is a clinical constellation that is highly suggestive of camplyobacter." Id. at p. 33 (12-15). Moreover, Dr. Golden explained that "even if a stool study had been sent it may well have been negative because a lot of patients stop shedding organisms within a couple of days . . . a negative stool culture would certainly not rule it out." Id. at 96 (17-22). Furthermore, she explained that "serologic testing was not ordered because it in no way would have changed" the management of Ms. Pridgeon's care. Id. (22-23).

The defendant would lead this Court to believe that it is impossible to diagnose GBS without such "evidence" and that only Dr. Golden would make such a "speculative"

7

diagnosis. However, this argument ignores the fact that ultimately, neuromuscular testing by Dr. Jonathan Goldstein, a nerve conduction study specialist at Yale University, confirmed that Ms. Pridgeon had an AMAN strain or pattern of GBS.[1] The AMAN strain or pattern of GBS has been closely linked in the medical literature to *c. jejuni*.[2] Moreover, the defendant's own expert, Dr. Block, agreed that the AMAN or axonal form is the type of GBS caused by campylobacter.[3] Ms. Pridgeon's medical records from her admission to the Hospital of St. Raphael for treatment of GBS document the differential diagnosis process that concluded her GBS was triggered by her earlier *c. jejuni* caused illness.[4] The differential diagnosis process is widely accepted in the practice of medicine.[5] If the defendant had its way, however, the medical profession would never be permitted to make such diagnoses because of a lack of "hard evidence."

Conspicuously missing from the defendant's Reply Brief is any reference to the sworn testimony of Ms. Pridgeon and Dr. Kra that she had eaten a few bites of the chicken meal, when she contemporaneously told Dr. Kra that it was cold, pink and under cooked. See Pridgeon Depo. pgs 32-35; see also Pridgeon and Kra Affidavits. It further ignores the testimony of Dale Norgard and Amanda Pratt, on behalf of American Airlines, that there is no one who is able to testify to the contrary. See Norgard Depo at p. 29 (3-7). Contrary to

---

[1] See Medical Report of Dr. Jonathan Goldstein, March 14, 2001, attached as Exhibit M to Affidavit of Timothy O'Keefe
[2] See *"Does C. jejuni infection elicit 'demyelinating' Gullian-Barré Syndrome"* Kuwabara et al, Neurology, vol. 63(3) 10 August 2004, p 529-533, [hereinafter "Kuwabara Article"], attached as Exhibit M to Affidavit of Timothy O'Keefe
[3] Block depo at p. 89-90.
[4] See Medical Report of Hospital of St. Raphael dated June 23, 2000, attached as Exhibit M to Affidavit of Timothy O'Keefe
[5] Block depo at p. 80-81.

8

the defendant's argument, the evidence in this case demonstrates: 1) that Ms. Pridgeon ate a chicken meal on board American Airlines Flight 121 that was cold, pink and undercooked; 2) that she was diagnosed on July 1, 2000 by Dr. Golden as having GBS probably secondary to campylobacter; and 3) that Ms. Pridgeon's contraction of GBS constitutes an accident for the purposes of the Warsaw Convention.

The usual operation of an airplane does not require that passengers be served with in-flight meals tainted with dangerous bacteria. The fact that the defendant did serve Ms. Pridgeon with a meal tainted with dangerous bacteria was "unexpected" and "unusual". This situation is no different from the facts underlying the holdings in the cases cited in the plaintiff's Opposition. There is no reasonable factual distinction that can be drawn between the service of a meal with a fish bone or other foreign object or the mistaken service of an alcoholic beverage and the service of campylobacter tainted chicken. As such, the service of contaminated food by an air carrier is an "accident" for the purposes of the Warsaw Convention.

Furthermore, it bears repeating that this case is quite similar to <u>Jaroslawicz v. Prestige Caterers, Inc.</u>, 2002 N.Y. App. Div. LEXIS 2471. In that case the plaintiff sought to recover damages against the defendant for food poisoning which he claimed was caused by the ingestion of *c. jejuni* and developed into GBS. The defendant sought summary judgment claiming that the plaintiff could not meet its burden of proving causation. The court held that the defendant expert's bald statement that there was "insufficient information" to conclude that the plaintiff's illness was due to improperly cooked food, "was not adequate to meet

defendants' burden as summary judgment movants to demonstrate their prima facie entitlement to summary judgment..." Id. The plaintiff's evidence included a summary of events demonstrating the temporal relation between the plaintiff's ingestion of campylobacter, his subsequent gastrointestinal illness, his contraction of GBS, the observations of his treating physicians and the medical opinions submitted on his behalf based upon the medical studies documenting the association between campylobacter ingestion and GBS. Id. Ms. Pridgeon has presented the same information here.

Because Ms. Pridgeon has demonstrated that a genuine issue of material fact exists regarding whether her injuries constitute an accident for the purposes of the Warsaw Convention, this Court should deny the defendant's Motion for Summary Judgment.

### b. Ms. Pridgeon's conduct has no bearing on whether the meal served by American Airlines caused her injuries and losses

Whether Ms. Pridgeon made a verbal or written complaint to American Airlines regarding the meal served to her on June 13, 2000 has no bearing on the liability of the defendant. Moreover, the defendant's incessant reliance on this one fact demonstrates its apparent need to distract the Court from the issues at hand. Whether Ms. Pridgeon filed a verbal or written complaint with the defendant is entirely irrelevant to the question of whether the defendant served a tainted meal to her or took all necessary measures to prevent her harm. Moreover, this argument completely ignores the extremely severe and debilitating nature of Ms. Pridgeon's battle with GBS and her inability to even make a complaint during that time period. The defendant attempts to argue that because Ms. Pridgeon was discharged

10

from the hospital in November of 2000, she could have made some form of complaint after that time. Again, the defendant completely disregards the severity of the after-effects of Ms. Pridgeon's GBS and her need for rehabilitative care until 2002. Moreover, the defendant fails to explain how it would have been able to somehow trace Ms. Pridgeon's particular piece of chicken in November of 2000 versus any other point in time.

At the very least, the effect of the timing of Ms. Pridgeon's complaint regarding the meal should be weighed by a jury. For the purposes of a Motion for Summary Judgment, however, such a fact has no bearing on the narrow issues of whether the injuries sustained by Ms. Pridgeon constitute an "accident" under the Warsaw Convention and whether the defendant took "all necessary measures" to prevent her harm.

## II.  THE DEFENDANT IS NOT ENTITLED AS A MATTER OF LAW TO AN ORDER LIMITING DAMAGES

The defendant has not satisfied its burden of proving that there is no genuine issue of material fact related to its Article 20(1) defense in this case. Furthermore, it has not provided the court with any credible evidence to support its claim that it is entitled to a judgment as a matter of law on the issue of whether it took "all necessary measures" to avoid Ms. Pridgeon's harm. In fact, in direct contravention to its legal claim, the defendant has demonstrated again in its Reply Brief that it has absolutely no proof of the measures and precautions that were taken in June 2000 to prevent Ms. Pridgeon's serious illness. Contrary to the defendant's assertion that Ms. Pridgeon refers to steps that should have been taken two

years after the accident occurred, Ms. Pridgeon has identified several failures on the part of the defendant prior to the service of the meal. By attempting to shift the focus on the plaintiff's response, the defendant clearly fails to recognize that it has the burden of proof on this issue and has failed to meet this burden for the purposes of a Motion for Summary Judgment.

Rather than discussing or even listing what measures it specifically took to prevent the plaintiff's severe damages with respect to the chicken meal actually served to the plaintiff, the defendant again attempts to misdirect the Court's attention to a number of red herrings. In particular, the defendant argues that the absence of complaints of illness made by any other passengers somehow demonstrates that it took all necessary measures to prevent Ms. Pridgeon's illness. This argument ignores the sworn testimony of Dr. Golden and the court's admonition in the Manufacturers case. Moreover, the defendant again points out that the plaintiff never complained about the tainted food until the filing of this lawsuit twenty-three months after her flight. This is entirely irrelevant to the question of whether the defendant took all necessary measures to prevent the Ms. Pridgeon's harm and completely ignores Ms. Pridgeon's inability to even make a complaint during that time period. Finally, the defendant relies on Ms. Pratt's deposition testimony in support of its defense.

In reality, Ms. Pratt's testimony demonstrates that the defendant has no knowledge and made no efforts to ensure that Ms. Pridgeon was not served a tainted chicken meal on her flight. Ms. Pratt testified that she could not specifically say how long the particular piece of chicken that was ultimately served to Ms. Pridgeon was at Gate Gourmet's facility at the

airport. Pratt Depo at p. 19 (20-24). Moreover, she testified that she did not know the expiration date that was assigned to the particular chicken meal served to Ms. Pridgeon. Id. at p. 22 (6-8). She also was unable to verify whether the expiration date for that chicken meal had expired. Id. (9-13). Ms. Pratt further testified that it would be a violation of the defendant's policy to serve a meal with an expired date, but also admitted that she was unable to verify whether this policy was adhered to or violated in this particular case. Id. at p. 23 (1-4).

Ms. Pratt also testified that it was the policy of the defendant to rely on its agent, Gate Gourmet, to adhere to those standards and specifications in preparing and storing the meals, but was unable to testify as to whether any of those standards or specifications were followed in the storage and preparation of Ms. Pridgeon's meal. Id. at p. 24 (9-15; 22-25). She also admitted that she does not know the temperature at which the particular chicken meal was served to Ms. Pridgeon. Id. at p. 26 (12-14). Moreover, she admitted that she could not testify whether the defendant's requirement that all of its meals be fully cooked before being boarded on the plane was actually fulfilled in the case of Flight 121. Id. (18-25). Finally, Ms. Pratt testified that she understood that serving undercooked chicken to a passenger could be potentially harmful, but could not say what precautions were taken on the specific day that the chicken meal was served to Ms. Pridgeon to ensure that Ms. Pridgeon was served a safe meal. Id. at p. 29-30 (14-16; 9-12).

The testimony of Dale Norgard similarly supports Ms. Pridgeon's position that the defendant has not met its burden of proof on its "all necessary measures" defense.

13

Mr. Norgard testified that there is no dispute that Ms. Pridgeon was served chicken on Flight 121. Norgard Depo at p. 18 (19-24). He stated that he was not aware of anybody who would testify that Ms. Pridgeon was not, in fact, served the chicken meal on Flight 121. Id. at p. 29 (3-7). He was not aware of anybody that would testify that Ms. Pridgeon did not consume a portion of the chicken meal. Id. at p. 29 (15-19). He further testified that he has not seen or heard anything that would lead him to believe that the chicken served to Ms. Pridgeon was not undercooked, cold and pink. Id. at p. 30-31 (24-25; 1-2); p. 33 (13-19). Mr. Norgard admitted that the Declaration of Matrix de Vries which was filed in support of the defendant's motion does not address at all the specific piece of chicken that Ms. Pridgeon was served on Flight 121. Id. at p. 35-6 (24-5; 1-3). Most importantly, he admitted that the defendant has not produced any evidence in support of its motion that tracks the actual piece of chicken that was served to Ms. Pridgeon. Id. at p. 36 (4-9).

Neither Ms. Pratt nor Mr. Norgard was able to provide any credible evidence to support the defendant's claim that it took "all necessary measures" to prevent Ms. Pridgeon's harm. In fact, both witnesses were forced to admit that they had no information whatsoever concerning the precautionary measures that were taken by the defendant to prevent the service of the *campylobacter* tainted meal to Ms. Pridgeon. The testimony of both Mr. Norgard and Ms. Pratt demonstrates that the defendant has not proved (and cannot prove) that it took all necessary measures to prevent the harm to Ms. Pridgeon. Their testimony further makes clear that the defendant cannot identify the steps that it or any of its agents took to produce, store, prepare or serve Ms. Pridgeon's meal on June 13, 2000.

The uncontroverted evidence that this Court has to consider in opposition to the defendant's motion is provided by Ms. Pridgeon and Dr. Kra through deposition testimony and affidavits. Ms. Pridgeon has testified, and Dr. Kra has confirmed, that she had eaten a few bites of the chicken meal, when she contemporaneously told Dr. Kra that it was cold, pink and under cooked. See Pridgeon Depo. pgs 32-35; see also Pridgeon and Kra Affidavits.

In seeking an order from the court limiting Ms. Pridgeon's damages, the defendant, in essence, is requesting the court to rule, as a matter of law, that it took "all necessary measures" to avoid Ms. Pridgeon's harm. This is a form of partial summary judgment. Summary judgment is a harsh remedy to be granted only where there are no issues of material fact. See Flli, 562 F. 2d at 565. The court should not weigh the evidence presented here to determine the truth, but, instead, it should determine whether a genuine issue of material fact exists. See Price, 107 F. Supp. 2d at 1367. Summary judgment is rarely granted on these issues. See e.g. Vildex, 1996 U.S. Dist. LEXIS 20297; Verdesca, 2000 U.S. Dist. LEXIS 15476. This is congruent with the history of the International Air Transport Association and the airlines' understanding that a successful "all necessary measures" defense would be "rare." The evidence presented here demonstrates that several issues of material fact remain. Accordingly, this court should deny the defendant's request that an order enter at this juncture limiting Ms. Pridgeon's damages. The court must allow a jury to determine whether the defendant air carrier took all necessary measures with respect to the

preparation and service of Ms. Pridgeon's meal to prevent her from suffering the horrendous consequences that she did.

## V. **CONCLUSION**

For the reasons stated herein, this Court should deny the defendant's Motion for Summary Judgment. Furthermore, the Court should not impose, at this juncture, a limit on Ms. Pridgeon's damages pursuant to Article 20 of the Warsaw Convention.

Dated: Hartford, Connecticut
November 30, 2004

Kenny, O'Keefe & Usseglio, P.C.

By
Timothy L. O'Keefe
Bar No. CT 15005
tokeefe@kou-law.com
Capitol Place
21 Oak Street, Suite 208
Hartford, CT 06106

To:   Michael J. Holland, Esq.
Condon & Forsyth, LLP
685 Third Avenue
New York, NY 10017
(212) 894-6740

Alison L. McKay, Esq.
Law Offices of Paul Lange
80 Ferry Boulevard
Stratford, CT 06615-6079
(203) 375-7724