**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

*********************************

LOLITA PRIDGEON

                                                DOCKET NO.
     Plaintiff                                          3: 02 CV1032 WWE

VS.

AMERICAN AIRLINES, INC., ET AL.           APRIL 8, 2005

     Defendants

*********************************

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO PRECLUDE DEFENDANT AMERICAN AIRLINES, INC.'S**
**EXPERT WITNESSES**

     Lolita Pridgeon, the plaintiff in this action, hereby submits this Memorandum of Law in Support of her Motion to Preclude defendant, American Airlines, Inc.'s, expert witnesses, Kevin Cahill, M.D. and Jerome Block, M.D. Ms. Pridgeon commenced this action against American Airlines, Inc. seeking recovery for personal injuries caused by its service of an undercooked chicken dish on American Airlines Flight 121 from Paris, France to New York City on June 13, 2000. The improperly prepared chicken caused Ms. Pridgeon to become violently ill with campylobacter jejuni ("c. jejuni") gastroenteritis, which then triggered the development of

Guillian-Barre Syndrome ("GBS"). GBS is a serious life-threatening illness. She has been left with serious residual deficits in her legs and hands.

## SUMMARY OF THE CASE

Ms. Lolita Pridgeon and her companion, Dr. Siegfried Kra were passengers on American Airlines Flight 121 between Paris, France and New York City on June 13, 2000.[1] When the flight crew offered her a choice of a beef or chicken entree, she chose the chicken meal and was given an individually wrapped dish of Chicken Rosemary. After eating several bites, she realized that the remainder of the chicken was cold, pink and undercooked. She showed the chicken to Dr. Kra, who advised her not to eat it. She discarded it and ate nothing else on board the flight. Two days later, on June 15th, she became ill with the classic symptoms of c. jejuni gastroenteritis; elevated temperature, vomiting and bloody diarrhea and pains in her knees, ankles and feet. On the morning of June 23rd, Ms. Pridgeon attempted to get out of bed and could not stand. She was taken by ambulance to the Hospital of St. Raphael. By the time she was examined in the emergency department, she was unable to move her arms or legs.

Ms. Pridgeon was diagnosed with GBS, probably triggered by c. jejuni, but numerous tests were ordered to rule out other possible causes. GBS is a serious, life-threatening illness that causes temporary paralysis of its victims, who are often left with serious residual deficits after the acute phase of the disease.

---

[1] All facts are drawn from the depositions of Lolita Pridgeon and Dr. Majorie Golden.

---

Neuromuscular testing by Dr. Goldstein confirmed that Ms. Pridgeon had the AMAN form of GBS which has been linked to c. jejuni. The medical and scientific literature and communities have established that c. jejuni is present in a very high percentage of chickens sold for human consumption, and that even a few drops of liquid from undercooked chicken is sufficient to cause illness.

Ms. Pridgeon was transferred from the acute care section to the rehabilitative section of St. Raphael's on July 23rd and remained in the rehabilitative section until October 10th. Her home required remodeling to allow the use of a wheelchair and additional safety equipment to assist her in her daily activities. While she was able to regain her ability to walk, she still requires braces to walk and orthotics in her shoes. In addition, she continues to have numbness and some weakness in her hands. As a result her physical disability, Ms. Pridgeon has been unable to return to work as a medical transcriptionist. Ms. Pridgeon's medical bills to date are in excess of $175,0000, and she will continue to need assistive devices for the foreseeable future.

Defendant American Airlines, Inc. provided the plaintiff with reports from two experts, Kevin Cahill, M.D. and Jerome Block, M.D., both of whom have been deposed by the plaintiff. The plaintiff now moves that Dr. Cahill must be precluded from testifying because (1) he is not qualified to testify as an expert in this case and (2) his opinion is unreliable as he failed to

support his opinion with scientific facts or independent research or testing. The plaintiff also moves that Dr. Block should not be permitted to testify as his opinion is unreliable because he too fails to support his opinion with any independent research or testing.

For these reasons, the plaintiff, Lolita Pridgeon, respectfully requests that her Motion to Preclude Dr. Cahill and Dr. Block's testimony be granted.

## LEGAL ARGUMENT

### THE **DEFENDANT'S DISCLOSED EXPERTS** DO NOT **SATISFY** THE **STANDARD** FOR **ADMISSIBILITY** AND **MUST BE PRECLUDED FROM** TESTIFYING.

Federal Rule of Evidence 702 provides,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Whether or not to admit expert testimony is within the broad discretion of the trial court. *Turrentine v. Bell Canada,* NO. 98-7942, 1999 U.S. App. LEXIS 7765, *2-3 (2d Cir. 1999), *cert. denied,* 1999 U.S. LEXIS 7855 (1999). The district court must perform a gatekeeping role and assess whether each proposed expert's testimony is relevant, reliable, and otherwise satisfies Fed. R. Evid. 702. *Daubuert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589-90

(1993). The court must also assess whether each proposed expert is qualified to render an opinion on the topic for which he or she has been summoned to testify. *Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 81 (2d Cir. 1997). This inquiry by the court is meant "to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." *Armorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 267 (2d Cir. 2002).

> A. <u>Kevin Cahill, M.D.'s testimony must be precluded because he is not qualified to testify as an expert in this case.</u>

"[A] medical degree is not enough to qualify [a doctor] to give an opinion on every conceivable medical opinion." *McCullock v. IJB. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir. 1995)(internal quotes omitted). An expert is qualified by "by knowledge, skill, experience, training or education". FED R. Evil). 702. An individual who does not have any formal education in an area, may still be qualified to testify as an expert based upon his or her extensive practical experience in said area. *See McCullock,* 61 F.3d at 142-43 (affirming district court holding that although the proposed expert had no formal training in the areas of fume dispersal and air quality, his extensive experience in these areas qualified him as an expert); *see also TVT Records v. The Island of Def Jam Music Group,* 250 F.Supp. 2d 341, 351 (S.D.N.Y. 2003)(holding an expert qualified to testify regarding the market performance

of a music album based upon his extensive experience within the music and entertainment industry).

A court properly excludes an expert's testimony when his or her expertise is too general or deficient under the circumstances of the case. *Stagl,* 117 F.3d at 81. Furthermore, the expert's proposed testimony must assist the trier of fact. *Bonton v City of New York, 03* Civ. *2833, 2004* U.S. Dist. LEXIS 22105, *10 (S.D.N.Y. Nov. *3, 2004).*

Dr. Cahill does not meet the requirements for qualification set forth above. He is neither formally educated nor has any practical experience concerning c. jejuni or GBS. Although he has a medical degree and specializes in tropical diseases, Dr. Cahill has minimal, if any, experience with c. jejuni or GBS. (Cahill Dep. at *7;* lines *17-19,* attached as Exhibit A.) In fact, in the past when a patient of Dr. Cahill presented symptoms of GBS, he immediately referred the patient to a neurologist and did not participate in further diagnosis or treatment of the patient's GBS. *Id.* at 8-9. Dr. Cahill has never been (a) consulted as an expert on GBS, (b) involved in diagnosing a patient with GBS, or (c) involved in determining the cause of GBS in a patient. *Id.* at *5,* 8-9. In addition, although he is a prolific writer, Dr. Cahill has never researched or published a book or an article relating to either c. jejuni or GBS. *Id.* at *6-7.* Furthermore, Dr. Cahill admits to having no knowledge about the different

forms or patterns of GBS or the connection between certain forms of GBS and specific causes of GBS. *Id.* at 55; lines 11-19.

While Dr. Cahill may be extremely qualified to testify as an expert on topics such as tropical diseases, he is clearly not qualified to testify as an expert on the topics of c. jejuni and GBS. He admits having only minimal knowledge and no practical experience with these topics, thereby failing to meet even the basic qualification requirements. Accordingly, Dr. Cahill's testimony must be excluded.

> B. <u>Kevin Cahill, M.D. and Jerome Block, M.D. must be precluded from testifying because their opinions are unreliable as they failed to support their opinions with scientific facts or independent research or testing.</u>

As set forth above, Federal Rule of Evidence 702 permits an expert to testify provided the expert is qualified and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." In *Daubert,* the Supreme Court also provided four non-exclusive criteria to assist in assessing reliability: (1) whether the theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether there is general acceptance within the relevant scientific

community. *Daubert,* 509 U.S. at 593-94. Depending upon the nature of the issue in the case, all four factors may not be pertinent in assessing reliability. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999).

Expert testimony that is speculative, conjectural, or based upon unrealistic or contradictory assumptions must be excluded. *Boucher v. U.S. Suzuki Motor Corp., 73* F.3d 18, 21 (2d Cir. 1996). An expert's opinion cannot be connected to the data of the case only by the *ipso dixit* of the expert; the opinion must be supported. *Santoro v. Donnelly,* 340 F.Supp. 2d 464, 475 (S.D.N.Y. 2004). Failure by an expert to explain or provide support for the opinion renders the expert's testimony inadmissible. *See Turrentine,* 1999 U.S. App. LEXIS 7765 (affirming district court's decision to exclude the testimony of an expert that failed to explain the methodology utilized in reaching his conclusion); *see also Washburn v. Awad,* No. 99-9121, 2000 U.S. App. LEXIS 8601 (2d Cir. May 1, 2000)(excluding testimony by expert that was not supported by a scientific method); *In re: Rezulin Prod. Liab. Litig., 00* Civ. 2843, 2004 U.S. Dist. LEXIS 25038 (S.D.N.Y. Dec. 10, 2004)(holding that an expert's testimony which amounted to nothing more than a generalization supported by unspecified studies is inadmissible); *Maurizio v. Goldsmith,* 96 Civ. 4332, 2002 U.S. Dist. LEXIS 6032 (S.D.N.Y. April 9, 2002)(excluding expert's testimony where expert failed to explain the

methodology behind his conclusion and failed to identify any publication or article in support of his opinion).

      1.    *Dr. Cahill's testimony is unreliable.*

Applying the standards discussed above, it becomes clear that Dr. Cahill's testimony is unreliable. According to the report provided to the plaintiff's counsel, Dr. Cahill "do[es] not believe there is sufficient evidence to relate [the plaintiff's GBS] to a meal eaten on an airline." Cahill Report, attached as Exhibit B. Prior to rendering his opinion, Dr. Cahill only reviewed the plaintiff's medical records and the report prepared by Dr. Golden, an expert disclosed by the plaintiff. (Cahill Dep. at 28). Dr. Cahill believes he may have consulted a journal article concerning c. jejuni. *Id.* at 11-12. However, he cannot recall the title or authors of the article. *Id.* at 13.

The sole support for his opinion is that there was no mention in Ms. Pridgeon's medical records of any cultures detecting c. jejuni. *Id.* However, Dr. Cahill fails to consider other methods of determining c. jejuni as the cause of a patient's GBS such as, the connection between certain forms or patterns of GBS and specific causes of GBS. In fact, Dr. Cahill testified that he had no knowledge of the existence of such a connection. *Id.* at 55, lines 11-19. Dr. Cahill fails to see evidence of the connection between the plaintiff being

served raw chicken and her GBS, but does not have all the available and necessary information to form a reliable opinion concerning this matter.

Dr. Cahill does not dispute that the plaintiff has GBS and simply states, "I don't know what her GBS is due to." *Id.* at 30; lines 7-16. He also acknowledged that c. jejuni is associated with GBS. *See Cahill Report.* In his deposition, Dr. Cahill suggested that the GBS could have been caused by an amebic infection, but offered no support for this position. *Id.* at 36. He then admitted that amebic infections have never been linked with causing GBS. *Id.* Dr. Cahill further acknowledged that the most common source for c. jejuni is poultry, which the plaintiff asserts caused her GBS. *Id.* at 61.

Dr. Cahill conducted no independent research, failed to assert a plausible, testable theory for the cause of the plaintiff's GBS, failed to develop his opinion utilizing a reliable principle or method, and certainly did not apply any method to the facts of this case. Since Dr. Cahill's opinion has not been tested or subjected to peer review, both of which assist the court in determining whether testimony is reliable. Furthermore, Dr. Cahill provided no publications to support his opinion.

In reality, Dr. Cahill's testimony amounts to nothing more than "it is because I say it is". His proposed testimony is speculative and conjectural. Like the precluded experts in *Turrentine* and *Maurizio,* Dr. Cahill fails to explain the methodology used in reaching his

conclusion and fails to otherwise support his conclusion. As a result, his opinion fails every prong of the tests set forth for establishing reliability. Accordingly, his testimony must be excluded.

### 2.   *Dr. Block's testimony is unreliable.*

In light of standards set forth in Federal Rule of Evidence 702 and the *Daubert* decision, Dr. Block's testimony is unreliable and, therefore, must be precluded. Dr. Block does not dispute that the plaintiff has GBS. (Block Dep. at 24; lines 4-7, attached as Exhibit C). Dr. Block's expert opinion is simply that he believes "it's highly speculative to believe the GBS occurred consequent to eating some undercooked chicken, even in a small amount, on an American Airlines plane. It's speculative." *Id.* at 76. It is striking that Dr. Block's criticism of the plaintiff's case is that it is speculative, when, in fact, his own opinion is completely speculative.

Dr. Block did not rely upon any specific publications or articles when developing this opinion. *Id.* at 92-93. Likewise, he did not conduct any independent research or develop his opinion using a reliable scientific method. His opinion was not subject to peer review. Nor did Dr. Block offer another explanation, reasonable or unreasonable, for the plaintiff's GBS.

Dr. Block based his opinion upon the lack of a stool culture indicating that c. jejuni was present in Ms. Pridgeon's system. *Id.* at 99, 108-09. However, like Dr. Cahill, Dr.

Block failed to consider other methods for determining the cause of GBS such as the connection between c. jejuni and a specific pattern or form of GBS. Furthermore, Dr. Block did not dispute the detection of the AMAN form of GBS found in Ms. Pridgeon's system which is linked to c. jejuni. *Id.* at 89-90. Yet, he failed to consider or account for this fact when arriving at his opinion.

Like Dr. Cahill, Dr. Block's opinion is connected to the facts of the case only by his *ipse dixit,* amounting to nothing more than the explanation "it is because I say it is". *See Id.* at 95; lines 13-17 ("It may seem immodest, but I thought I knew enough about Guillain-Barre without going back to the books or literature and I thought I was able to analyze the records without having to go to any references.").

Dr. Block's opinion amounts to nothing more than an unsubstantiated statement. While all the factors used to determine reliability are not required in order to deem an opinion reliable, there must be some indication of reliability in order for the testimony to be admitted. Dr. Block failed to develop his opinion utilizing *any* of the factors which permit a court to determine reliability. Clearly, his testimony does not meet the requirements for expert testimony set forth in Federal Rule of Evidence 702 or by the *Daubert* Court. Accordingly, Dr. Block's testimony must be precluded as unreliable.

## **CONCLUSION**

For the foregoing reasons, the plaintiff, Lolita Pridgeon, respectfully requests that her Motion to Preclude the defendant, American Airlines, Inc.'s, expert witnesses, Kevin Cahill, M.D. and Jerome Block, M.D. be granted.

                                                PLAINTIFF,
                                                LOLITA PRIDGEON

                                                BY: _____
                                                    Timothy L. O'Keefe
                                                    Kenny, O'Keefe & Usseglio, P.C.
                                                    21 Oak Street
                                                    Hartford, CT 06106
                                                    Telephone No.: (860) 246-2700
                                                    Federal Bar No. ct15005

CERTIFICATE OF SERVICE

     This is to certify that the foregoing Memorandum of Law in Support of Plaintiff's Motion to Preclude was mailed on April 8, 2005 to the following:

Alison L. McKay, Esq.
Law Offices of Paul A. Lange
80 Ferry Boulevard
Stratford, CT 06615-6079

Michael J. Holland, Esq.
Condon & Forsyth LLP
685 Third Ave.
New York, NY 10017

_____
Timothy L. O'Keefe